United States District Court
Southern District of Texas
**ENTERED**
November 08, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAMIKA MILLER, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19–CV–01550 |
| | § | |
| CITICORP CREDIT SERVICES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendant's Motion to Dismiss Amended Complaint and Brief in Support ("Motion to Dismiss"). *See* Dkt. 12. In the Motion to Dismiss, Citicorp Credit Services, Inc. ("Citicorp") requests that I enforce an arbitration agreement and compel Plaintiff Tamika Miller ("Miller") to arbitrate the claims she has raised in this lawsuit.

I have carefully reviewed the Motion to Dismiss, the responsive briefing, and a reply filed in support of the Motion to Dismiss. I have also analyzed the relevant case law. My recommendation is that the Motion to Dismiss be granted and Miller's claims be dismissed in favor of arbitration.

## BACKGROUND

Miller is an employee of Citicorp, working as a Third Party Risk Management Onsite Review Auditor. She alleges that her department at Citicorp "operates as a 'boys club fraternity type' environment where equal opportunities for pay raises, bonuses, opportunities to high level special projects, permanent remote work status, career advances, and flexibility in receiving medically prescribed therapy is often outright denied unfairly

for African American(s), women, and minorities." Dkt. 9 at 3. She has brought claims against Citicorp for gender and race discrimination, harassment, retaliation in violation of Title VII of the Civil Rights Act of 1964 and Section 1981 of the Civil Rights Act of 1866, and unfair pay in violation of the Equal Pay Act.

When Citicorp hired Miller in 2014, the company's employee handbook contained an Employment Arbitration Policy, providing for binding arbitration to resolve all employment-related disputes. Upon her hire, Miller signed an acknowledgment form, confirming receipt of the employee handbook and recognizing the applicability of the Employment Arbitration Policy. Miller signed similar acknowledgment forms when Citicorp updated the employee handbook in 2015 and 2017.

The 2017 Employment Arbitration Policy is a six-page, single spaced document with two columns, providing detailed rules and procedures on how an arbitration should be conducted between Citicorp and its employees. Important to the present case, the Employment Arbitration Policy "makes arbitration the required and exclusive forum for the resolution of all employment-related disputes . . . between [the employee] and Citi . . . which are based on legally protected rights." Dkt. 6-1 at 5. The disputes that must be arbitrated "include, without limitation, claims, demands or actions under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Civil Rights Acts of 1866 and 1991, . . . the Equal Pay Act of 1963, . . . and all amendments thereto, and any other federal, state or local statute, regulation or common-law doctrine." *Id.*

## COMPELLING ARBITRATION: THE LEGAL STANDARD

The Fifth Circuit has established a two-step inquiry for determining whether the parties have agreed to arbitrate a claim. *See Edwards v. Doordash, Inc.*, 888 F.3d 738, 743–44 (5th Cir. 2018). First, I must decide "whether the parties entered into *any arbitration agreement at all*." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This inquiry is a question of contract formation that looks at whether the parties formed a valid agreement to arbitrate some set of claims." *Henderson v. A&D Interests, Inc.*, No. 3:17-CV-096, 2018 WL 1240431, at *1 (S.D. Tex. Mar. 9, 2018). To make this determination, I am required to "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In doing so, I must consider whether the arbitration agreement may be invalidated by contract defenses such as unconscionability. *See Poole-Ward v. Affiliates for Women's Health, P.A.*, 283 F. Supp. 3d 595, 598 (S.D. Tex. 2017). "[A] party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004). Second, if there is a valid agreement to arbitrate, I am required to determine "whether the current dispute falls within the scope of a valid agreement." *Edwards*, 888 F.3d at 743.

It is worth noting that the Federal Arbitration Act ("FAA") "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (internal quotation marks and citation omitted). The FAA "leaves no place" for the court to exercise discretion. *See Dean Witter Reynolds, Inc.*

*v. Byrd*, 470 U.S. 213, 218 (1985).  As a result, I must order the parties to arbitrate issues covered by a valid arbitration agreement.  *See id.*

## ANALYSIS

### A.   IS THERE A VALID AGREEMENT TO ARBITRATE?

I must first decide whether an enforceable agreement to arbitrate was formed.  Miller does not dispute that she entered into an agreement to arbitrate employment-related disputes.  Instead, she "asserts that the unequal positions of the parties along with the confusing, complex, and overall hard to understand terms of the [Employment Arbitration Policy] make its enforcement unconscionable."  Dkt. 15 at 2.

Under Texas law, "[u]nconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself."  *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). "[C]ourts *may* consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision."  *Id.* (emphasis added).

Because arbitration is a favored method of dispute resolution, the Texas Supreme Court has cautioned that courts "'should be wary of setting the bar for holding arbitration clauses unconscionable too low' as that would undermine the 'liberal federal policy favoring arbitration agreements.'"  *Venture Cotton Coop v. Freeman*, 435 S.W.3d 222, 232 (Tex. 2014) (quoting *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 893 (Tex. 2010)).  Thus, a party opposing arbitration on the grounds of unconscionability bears the heavy burden of proving this defense.  *See id.*

4

### 1.  Procedural Unconscionability

The procedural unconscionability analysis "is concerned with assent and focuses on the facts surrounding the bargaining process." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 499 (Tex. 1991).  "The principles of [procedural] unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position. Unconscionability principles are applied to prevent unfair surprise or oppression." *In re Palm Harbor Homes*, 195 S.W.3d 672, 679 (Tex. 2006).  *See also Freeman*, 435 S.W.3d at 228 (describing an unconscionable contract as one that "no man in his senses and not under delusion would make").

Before diving into Miller's procedural unconscionability argument, it is helpful to briefly provide some background information on Fair Pay and Safe Workplaces Executive Order 13673, which was issued by President Barack Obama on July 31, 2014.  Executive Order 13673 applies to procurement of any federal contracts in excess of $500,000. Among other things, it provides that "contractors agree that the decision to arbitrate claims arising under Title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment may only be made with the voluntary consent of employees or independent contractors *after* such disputes arise."  Exec. Order No. 13673, 79 Fed. Reg. 45309, 45314 (July 31, 2014) (emphasis added).  President Donald Trump rescinded Executive Order 13673 on March 27, 2017.  Exec. Order No. 13782, 82 Fed. Reg. 15607 (Mar. 27, 2017).

In advancing a procedural unconscionability claim, Miller focuses on this portion of the Employment Arbitration Policy:

5

> [T]his Policy does not require arbitration of claims arising under Title VII or any tort related to or arising out of sexual assault or harassment ("the Referenced Claims") for employees (1) hired after the date the final regulations to the Fair Pay and Safe Workplaces Executive Order, Executive Order 1367[3] ("EO"), become effective, and (2) where the Citi entity employing such employee contracts with the federal government and such contract precludes pre-dispute agreements to arbitrate the Referenced Claims; except that if the EO is no longer effective for any reason (whether rescinded or superseded by further Executive Action, or invalidated by a court, or no longer effective for any other reason), the Referenced Claims shall be subject to arbitration under this Policy.

Dkt. 6-1 at 6.  The thrust of Miller's procedural unconscionability claim appears to be that President Trump rescinded Executive Order 13673 a month after Miller signed the 2017 acknowledgment and Citicorp failed to notify her of this alleged material change to the arbitration agreement.  Miller also asserts that based upon the above-cited contractual language, she "had a reasonable belief that her claims of harassment based on her sex would fall outside the [Employment Arbitration Policy] when she executed it."  Dkt. 15 at 2. Miller's arguments fail on many levels.

For starters, the express language Miller references from the Employment Arbitration Policy conclusively demonstrates that Miller had no reasonable basis to believe that she could avoid arbitration of her employment-related claims.  Indeed, the very provision Miller relies on specifically states that the exclusion of certain claims from arbitration would *not* apply if Executive Order 13673 was "no longer effective for any reason"—including rescission. Dkt. 6-1 at 6.  Thus, Miller was fully aware at the time she agreed to be bound by the Employment Arbitration Policy that if President Trump

rescinded Executive Order 13673, any arbitration exclusion would fall by the wayside. That is exactly what happened here.[1]

Moreover, the above-cited contractual language never applied to Miller. The contractual language expressly states that there are two conditions that must exist for an employee to avoid arbitration: (1) she had to be "hired after the date the final regulations" to Executive Order 13673 became effective; and (2) the Citi entity employing Miller had to contract with the federal government. *Id.* Citicorp notes that Miller cannot satisfy either of these requirements. First, she was hired in 2014, several years before the final regulations became effective in 2016. *See* Guidance for Executive Order 13673, "Fair Pay and Safe Workplaces," 81 FR 58654-01 (Aug. 25, 2016) (to be codified at 48 C.F.R. 22, 52). Second, Citicorp argues that the entity for which Miller worked did not contract with the federal government. Because Miller is unable to satisfy both of these mandatory prongs, she cannot escape arbitration.

To the extent Miller is trying to suggest that the arbitration agreement is also procedurally unconscionable because Citicorp failed to inform her the moment President Trump rescinded Executive Order 13673, I am not at all persuaded. There is simply no basis in contract or common-law that would require CitiCorp to provide instantaneous updates to its employees on the status of Executive Orders.

---

[1] It is also telling that Miller's allegations of discrimination and harassment began after President Trump rescinded Executive Order 13673, meaning that there was no possible way she could have reasonably expected her employment-related claims to stay out of arbitration.

In short, because the plain language in the Employment Arbitration Policy makes abundantly clear that any arbitration exclusion does not apply to Miller, her procedural unconscionability claim fails.

### 2. **Substantive Unconscionability**

As far as substantive unconscionability is concerned, the test is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001).

Miller's substantive unconscionability argument is, as Citicorp aptly points out, "murky." Dkt. 16 at 6. Without much explanation or analysis, Miller simply concludes that the arbitration agreement should be deemed unenforceable because of "unequal bargaining power between the parties, lack of sophistication of the Plaintiff in understanding the [Employment Arbitration Policy's] confusing, complex and overall hard to understand terms; and the overly harsh or unfairly one-sided nature of the [Employment Arbitration Policy]." Dkt. 15 at 4. Upon close analysis, this argument completely falls apart. Far from being "overly harsh or unfairly one-sided," the Employment Arbitration Policy (i) requires both parties to arbitrate all employment-related disputes; (ii) provides for the appointment of a neutral arbitrator; (iii) ensures that Miller can obtain any type of relief through arbitration that she could obtain through court proceedings; and (iv) required Citicorp to pay all arbitration-related fees. It is important to keep in mind that arbitration agreements are generally favored, and there is nothing inherently unconscionable about an

agreement to arbitrate employment disputes. "[I]n fact, Texas law has historically favored agreements to resolve such disputes by arbitration." *In re Poly-Am., LP*, 262 S.W.3d 337, 348 (Tex. 2008) (collecting cases). As such, I reject Miller's effort to invalidate the agreement to arbitrate based on substantive unconscionability.

**B.     THE PRESENT DISPUTE FALLS WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT**

Now that I have determined that there is a valid agreement to arbitrate some set of claims, I must decide whether Miller's claims fall within the scope of the Employment Arbitration Policy. On this issue, there is no dispute. The employment-related claims raised by Miller fall squarely within the Employment Arbitration Policy's broad scope, which was specifically designed to capture "all employment-related disputes." Dkt. 6-1 at 5.

## CONCLUSION

Because Citicorp has shown both that a valid arbitration agreement exists and that Miller's claims fall within its scope, I **RECOMMEND** that the Motion to Dismiss be **GRANTED** and this case be compelled to arbitration in accordance with the terms of the Employment Arbitration Policy.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Houston, Texas, this 8th day of November, 2019.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE